<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELY COOPER, | : | |
| | : | Civil Action No. 06-4523 (FSH) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GEORGE HEYMAN, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>
Ely Cooper
Special Treatment Unit
30-35 Hackensack Avenue
P.O. Box 699
Kearny, NJ 07032

Counsel for Respondents
David L. DaCosta
Deputy Attorney General
Ofc. of the NJ Atty. General
Dept. of Law & Public Safety
25 Market Street
P.O. Box 112
Trenton, NJ 08625

**HOCHBERG**, District Judge

Petitioner Ely Cooper, a civilly-committed mental patient
confined at the Special Treatment Unit in Kearny, New Jersey, has
submitted a petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254.  The respondents are Commissioner George Heyman
and the New Jersey Attorney General.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> In 1986, E.X.C., who was in his early thirties, kidnapped two young girls, ages seven and nine, and sexually molested them over a period of four days.  He was arrested when police discovered the two kidnap victims in his apartment.  Although E.X.C. denied penetrating either girl, a medical examination of the nine year old revealed tearing to her vagina.  In this same time frame, E.X.C. was living with a fifteen year old girl, with whom he was having sexual relations.  He also had a sexual relationship with her two sisters, ages thirteen and sixteen.
>
> E.X.C. remained in jail from his arrest in 1986 until 1988, when he pled guilty to multiple counts of sexual assault and kidnapping, and was sentenced to twenty-five years in State prison with eight years of parole ineligibility.  He was diagnosed as a repetitive and compulsive sex offender and, hence, served a portion of his sentence, from 1988 to 1992, at Avenel. He served the remainder of his sentence in the general prison population.
>
> E.X.C. was temporarily committed to the S.T.U. on August 30, 2001, after serving his prison sentence. Following a plenary hearing, Judge Freedman found that E.X.C. was a sexually violent predator in need of commitment and entered a commitment order on December 6, 2001; in a detailed oral opinion, Judge Freedman concluded that E.X.C. suffered from paraphilia, as well as a delusional disorder.  Noting that the kidnapping

------

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

occurred in circumstances which virtually guaranteed
that E.X.C. would be caught, Judge Freedman explained:

>He has not explored his problem.  He has no
>understanding as to why he did it.  He has a
>delusional disorder, the whole kidnapping was a
>delusion ... .  He had lost two children of
>similar age in a custody battle and decided he
>wanted to make an ideal family ... which he, in
>his mind, felt would be his 15 year old girlfriend
>and two kidnapped children.

At the review hearing on December 3, 2002, E.X.C.
stipulated that he continued to be a sexually violent
predator who was in need of commitment.  This appeal
concerns the next review hearing which occurred in May
2003.

At the May 2003 hearing, Dr. Kern testified for
the State that E.X.C. had refused to submit to
psychological testing at the S.T.U.,[fn1] and was only
at the beginning of the therapeutic process.  In fact,
in therapy he had only addressed the offenses
concerning the two very young girls and had not begun
to address his offenses with the teenage girls.  After
interviewing E.X.C. and reviewing his records, Dr. Kern
diagnosed him as having personality disorder NOS and
pedophilia.  He explained that, in an earlier report in
1987, he had arrived at a different diagnosis, because
he had been given incomplete information concerning the
nature of E.X.C.'s offenses.

>[Fn1] E.X.C. did consent to be tested by his own
>expert, Dr. Foley.

Dr. Gambone, a member of the Treatment Progress
Review Committee (TPRC) also testified for the State.
He was present at the April 16, 2003 TPRC meeting at
which E.X.C. was interviewed, and he had also
interviewed E.X.C. on a previous occasion.  The TPRC
recommended that E.X.C. begin phase two of treatment.
The TPRC noted that E.X.C. "has not yet worked on a
relapse prevention plan."  Dr. Gambone offered a cogent
explanation of the need for relapse prevention to
enable a sexual predator to resist committing further
offenses after release:

Any self-internalized behavior modification
or self-directed or self-monitored behavior
modification includes a lot of things:  knowing
how you think, knowing how you feel, knowing what
the triggers for the behavior you're trying to
control are, knowing what the sensations involved
with him -- in this case what the arousal pattern
is.

And then having key points throughout your
arousal where you can ... reorient yourself or
redirect yourself so that you can ... regain
control over your impulses and engage in the
behavior you're looking to do or avoid the
behavior you're looking to avoid.  And this would
be the same if you were trying to change eating
habits or study habits or smoking habits or
television habits ... And I think in general ...
[E.X.C.] has a lot of the foundation, but I don't
think he has the specifics.

...

When asked about how he would go about stopping
himself [from re-offending, E.X.C.] offered no
specific de-escalation techniques or prevention
plan.

And that's really the heart of a lot of what we
think he needs to do.

During cross-examination of Dr. Gambone, E.X.C.'s
counsel confronted him with progress notes from therapy
groups in which E.X.C. participated.  In this context,
E.X.C.'s prior statements, as reflected in the S.T.U.
records, were placed before the court.  Dr. Gambone
discussed the opinions of the therapist who wrote the
progress notes, concerning E.X.C.'s "difficulty
understanding his [sexual] arousal patterns" but he
then also explained why he agreed with those
assessments, based upon the factual reports of E.X.C.'s
statements.  He agreed that the TPRC relied on Dr.
Kern's diagnosis of pedophilia in making its
recommendations.  Dr. Gambone admitted that when he
evaluated E.X.C. at the end of his prison term, he
concluded that he presented a low risk of recidivism
based upon the results of the Statis-99 and MNSOST
tests.  However, he asserted in his testimony that, at

4

that time, he did not have information concerning
E.X.C.'s offenses with the three teenage girls.  He
also stated that the evaluation at the prison was
intended as a screening mechanism to identify inmates
who should be considered for commitment proceedings,
and that it was considerably shorter and less in-depth
than the evaluation performed at the S.T.U.

In his defense, E.X.C. presented the testimony of
Dr. Foley, who interviewed E.X.C. twice in April 2003
for a total of approximately two hours, and performed
psychological testing.  Dr. Foley testified that he was
unable to formulate a diagnosis, although he had
"several rule-outs, several considerations that I think
probably should be pursued in the future by treatment
providers."  He agreed that it was "possible to
diagnose someone as a pedophile based on reports in the
records even if that person denies that they're
pedophilic."  However, he concluded that E.X.C. was not
a pedophile.

Dr. Foley confirmed that E.X.C. admitted to him
that he had sexual contact with the three teenage girls
and with the nine-year old kidnap victim.  He also
described E.X.C. as "more like an incest offender, but
not with his own children."  In his written report, he
opined, largely based upon the results of psychological
tests, including the Abel Screen and the Haar
Psychopathy Checklist, that the kidnapping and the
sexual relationships with the teenage girls represented
a one-time psychotic or delusional event and that
E.X.C. was not highly likely to re-offend.  But he
admitted in his trial testimony that these were merely
"hypotheses" and "I wasn't able to confirm them."

(Appellate Division Opinion, Mar. 9, 2005, at 2-7.)

B.   Procedural History

This Petition challenges the determination in June 2003 that

Petitioner remained a sexually violent predator in need of civil

commitment.  The trial court's decision is set forth in a 50-page

oral opinion.  (Respondents' Ex. 4.)  The Superior Court of New

Jersey, Appellate Division, affirmed the commitment decision in

an opinion dated March 9, 2005.  The Supreme Court of New Jersey

denied certification on July 18, 2005.  This Petition followed.

Here, Petitioner asserts three grounds for relief: (1) the

State failed to establish by clear and convincing evidence any of

the elements for commitment under the Sexually Violent Predator

Act, in violation of Petitioner's Fourteenth Amendment right to

due process; (2) the state court relied on hearsay, in violation

of Petitioner's Sixth and Fourteenth Amendment rights; (3)

Petitioner was deprived of effective assistance of counsel in his

commitment hearing, in that counsel failed to object to the

admission of hearsay evidence.[2]

Respondents contend that the Petition is time-barred and

meritless.

_____

[2] In his Reply Brief, Petitioner asserted for the first time
the claim that civil commitment under the New Jersey Sexually
Violent Predator Act constitutes penal incarceration in violation
of the constitutional prohibition against ex post facto laws and
double jeopardy.  As Petitioner raised this claim for the first
time in his Reply brief, after having declined to assert
additional claims in response to this Court's Notice and Order
pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), this
Court will not consider it. See, e.g., Comm. of Pennsylvania ex
rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)
("the legal theories set forth in [Plaintiff's] brief are helpful
only to the extent that they find support in the allegations set
forth in the complaint. '[I]t is axiomatic that the complaint may
not be amended by the briefs in opposition to a motion to
dismiss.' ") (quoting Car Carriers, Inc. v. Ford Motor Co., 745
F.2d 1101, 1107 (7th Cir.), cert. denied, 470 U.S. 1054 (1984));
Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), cert.
denied, 514 U.S. 1026 (1995) ("A Traverse is not the proper
pleading to raise additional grounds for relief.").

II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent

part:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of
> the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
>    (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
>    (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

A.   Timeliness

Respondents are incorrect in their assertion that the

Petition is time-barred.

The limitation period for a § 2254 habeas petition is set

forth in 28 U.S.C. § 2244(d),[3] which provides in pertinent part:

---

[3] The limitations period is applied on a claim-by-claim
basis.  See Fielder v. Verner, 379 F.3d 113 (3d Cir. 2004), cert.
denied, 543 U.S. 1067 (2005); Sweger v. Chesney, 294 F.3d 506 (3d
Cir. 2002).

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...

Thus, evaluation of the timeliness of a § 2254 petition requires a determination of when the pertinent judgment became "final."[4]

A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  <u>See</u> <u>Swartz v. Meyers</u>, 204 F.3d 417, 419 (3d Cir. 2000); <u>Morris v. Horn</u>, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

Finally, "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."  <u>Burns v. Morton</u>, 134 F.3d 109, 113 (3d Cir. 1998) (citing <u>Houston v. Lack</u>, 487 U.S. 266 (1988)).

Here, the judgment under attack became final on October 16, 2005, 90 days after the Supreme Court of New Jersey denied certification on July 18, 2005.  The Petition dated September 12, 2006, and received in this Court on September 18, 2006, is timely.

---

[4] The tolling provisions of the statute of limitations are not at issue here.

B.     Claims Decided on the Merits in State Court Proceedings

          With respect to any claim adjudicated on the merits in state

court proceedings, the writ shall not issue unless the

adjudication of the claim

>          (1) resulted in a decision that was contrary to,
>     or involved an unreasonable application of, clearly
>     established Federal law, as determined by the Supreme
>     Court of the United States; or
>
>          (2) resulted in a decision that was based on an
>     unreasonable determination of the facts in light of the
>     evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

          A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless

arrives at a result different from [the Court's] precedent."

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,

for the Court, Part II).  A state court decision "involve[s] an

unreasonable application" of federal law "if the state court

identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the

particular state prisoner's case," and may involve an

"unreasonable application" of federal law "if the state court

either unreasonably extends a legal principle from [the Supreme

Court's] precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester

v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19

(2002)).

### III.   ANALYSIS

The New Jersey Sexually Violent Predator Act, N.J.S.A.

§ 30:4-27.24 et seq., establishes an involuntary civil commitment

procedure for a sexually violent predator, defined by the act as

"a person who has been convicted, adjudicated delinquent or found

not guilty by reason of insanity for commission of a sexually

violent offense, or has been charged with a sexually violent

offense but found to be incompetent to stand trial, and suffers

from a mental abnormality or personality disorder that makes the

person likely to engage in acts of sexual violence if not

confined in a secure facility for control, care and treatment,"

N.J.S.A. § 30:4-27.26.   This standard must be met by clear and

convincing evidence.   N.J.S.A. 30:4-27.32(a).   Review hearings

are scheduled on at least an annual basis.   N.J.S.A. 30:4-27.16.

### A.   Evidence and Due Process Considerations

Petitioner contends that the State failed to establish by

clear and convincing evidence any of the elements required for

commitment under the Sexually Violent Predator Act, violating his

Fourteenth Amendment right not to be deprived of liberty without

due process.   Petitioner also contends that the court violated

his rights under the Sixth and Fourteenth Amendments when it

considered hearsay evidence contained in exhibits and testimony

of the expert witnesses.[5]

The Appellate Division rejected Petitioner's challenges to

the admissibility and sufficiency of the evidence.

> We find no merit in any of these contentions, and
> we conclude that they do not warrant discussion in a
> written opinion, R. 2:11-3(e)(1)(E), beyond the
> following comments.

> After a two-day hearing, Judge Freedman rendered a
> lengthy and comprehensive oral opinion comprising fifty
> pages of transcript.  He properly reviewed the history
> of E.X.C.'s commitment, his prior diagnoses, and his
> history of therapy, before cogently discussing E.X.C.'s
> current diagnosis, his incomplete progress in therapy,
> and the reasons why E.X.C. remained a sexually violent
> predator who was still in need of commitment.  Judge
> Freedman also explained why he found Dr. Foley's
> testimony unconvincing and why he found Dr. Kern and
> Dr. Gambone to be more credible witnesses.  Judge
> Freedman concluded that E.X.C. suffered from paraphilia
> NOS with a delusional disorder, that "he suffers from a
> mental abnormality," and "that abnormality predisposes
> him to engage in acts of sexual violence."  He also
> concluded that even after lengthy treatment E.X.C.
> "still, to a great extent, doesn't understand today
> what's going on, why he did what he did, what his risks
> are for doing it again if he got out."  Judge Freedman
> concluded that "while he has made progress, he hasn't
> made sufficient progress to justify his release," and
> he remains highly likely to re-offend if released.

> Our scope of review of Judge Freedman's decision
> is "extremely narrow," and we must defer to the trial
> court's determination unless the record "reveals a
> clear abuse of discretion."  In re Commitment of J.P.,

---

[5] The challenged hearsay evidence includes treatment notes
covering the previous year of Petitioner's treatment, the Adult
Presentence Report, and various expert reports which contained
hearsay statements on which the experts relied in forming their
opinions (including medical records and references to the Adult
Presentence Report).

339 N.J. Super. 443, 459 (App. Div. 2001).  See also In the Matter of the Civil Commitment of V.A., 357 N.J. Super. 55, 63 (App. Div.), certif. denied, 177 N.J. 490 (2003).  We find no abuse of discretion here.  There was nothing improper in Judge Freedman's considering the entire record of E.X.C.'s commitment in arriving at his decision.  Periodic review hearings under the SVPA do not take place in a vacuum.  They take place in the context of an ongoing course of therapy, with the goal of determining whether the sexual predator has made sufficient progress that he is no longer highly likely to re-offend if released.  The record in this case amply supports Judge Freedman's determination that E.X.C. remains a sexually violent predator whose treatment has not progressed to the point where he can safely be released.

(Opinion of Appellate Division, March 9, 2005, at 9-10.)

The Supreme Court has recognized that commitment to a mental hospital produces "a massive curtailment of liberty," Humphrey v. Cady, 405 U.S. 504, 509 (1972), that "requires due process protection," Addington v. Texas, 441 U.S. 418, 425 (1979); O'Connor v. Donaldson, 422 U.S. 563, 580 (1975) (Burger, C.J., concurring).

"'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances."  Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961).  "Due process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the

13

procedures used, and the probable value, if any, of
additional or substitute procedural safeguards; and
finally, the Government's interest, including the
function involved and the fiscal and administrative
burdens that the additional or substitute procedural
requirement would entail.

Matthews v. Eldridge, 424 U.S. 319, 334 (1976).

Weighing the requirements of due process in the transfer of
a prisoner from prison to a state mental hospital for treatment,
the Court held that a prisoner facing such transfer is entitled
to: (1) written notice; (2) a hearing at which the evidence being
relied upon for the commitment is disclosed to the prisoner;
(3) an opportunity at the hearing for the prisoner to be heard in
person, to present testimony and documentary evidence, and to
cross-examine witnesses called by the State, except upon a
finding, not arbitrarily made, of good cause for not permitting
such presentation, confrontation, or cross-examination; (4) an
independent decision-maker; (5) reasoned findings of fact;
(6) qualified and independent assistance to indigent prisoners
facing transfer to a mental hospital;[6] and (7) effective and
timely notice of these rights.  Vitek v. Jones, 445 U.S. 480,
494-97 (plurality opinion) and 497-500 (Powell, J., concurring)
(1980).

---

[6] In Vitek, the Supreme Court did not hold that the
"qualified and independent assistance" required by due process
prior to transfer of an inmate to a psychiatric institution must
rise to the level of a licensed attorney.  See Vitek, 445 U.S. at
497 (Powell, J., concurring).

14

In addition, the state must establish grounds for civil commitment by "clear and convincing" evidence.  Addington v. Texas, 441 U.S. at 433.

The Sixth Amendment right of confrontation, and its attendant limitations on the uses of hearsay evidence, does not attach to civil proceedings such as the commitment proceeding at issue here.  See, e.g., Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005), cert. denied, 126 S.Ct. 2037 (2006); U.S. v. Baker, 836 F.Supp. 1237, 1246 (E.D.N.C. 1993).  Moreover, Petitioner has cited no Supreme Court case, and this Court has located none, holding that the Due Process Clause prohibits the use of hearsay evidence in civil commitment proceedings.  Nor does the Matthews v. Eldridge balancing test compel such a conclusion.  While the loss of liberty associated with civil commitment is indeed, severe, the government's interest in confinement of sexually violent predators is similarly significant.  The effect of the admission of hearsay evidence is tempered by the "clear and convincing" burden of proof imposed on the government and the requirement of annual reviews.  Moreover, Petitioner does not contend that he was prevented from presenting competent contrary evidence as to his mental condition.  To the contrary, Petitioner presented a competing expert witness.  The Supreme Court has opined that hearsay evidence may be used in other situations involving loss of liberty.  For example, in determining what

process is due a citizen-detainee challenging his classification as an enemy combatant, and the resultant loss of liberty, a plurality of the Supreme Court recently held that the exigencies of that situation would permit hearsay evidence to be accepted as the most reliable available evidence from the government, provided the detainee is given an opportunity to present his own factual case to rebut that evidence.  See Hamdi v. Rumsfeld, 542 U.S. 507, 533-39 (2004).  Accordingly, the state court's determination that Petitioner was not deprived of his constitutional rights by the use of hearsay testimony is not contrary to or an unreasonable application of Supreme Court precedent.

Nor was it unreasonable for the state court to conclude that there was enough evidence in the record to sustain the commitment under a "clear and convincing" evidence standard.  Nothing in Supreme Court jurisprudence precludes a court from considering all the evidence in the record of commitment proceedings in reaching its determination in an annual review hearing.  Taking into consideration the entire record relied upon by the state courts, it is apparent that the state court determination is supported by clear and convincing evidence.

16

B.    Ineffective Assistance of Counsel

      Petitioner contends that he was deprived of his

constitutional right to effective assistance of counsel, by his

counsel's failure to object to the admission of hearsay evidence.

      The Appellate Division rejected this argument without

discussion.

      As discussed above, in Vitek, only a four-justice plurality

of the Court would have required the appointment of legal counsel

to indigent inmates facing transfer.  A fifth justice would

require only "qualified and independent assistance."  Vitek, 445

U.S. at 496-97 (plurality opinion) and 497-500 (Powell, J.,

concurring).  Thus, the Supreme Court has not held that a person

facing civil commitment is entitled to effective assistance of

counsel, or even assistance of counsel, under the Due Process

Clause, in a civil commitment proceeding.

      Neither has the Supreme Court held that the Sixth Amendment

right to effective assistance of counsel in criminal proceedings

attaches to civil commitment proceedings.  Cf. Strickland v.

Washington, 466 U.S. 668, 687, 694 (1984) (to prevail on a claim

of ineffective assistance of counsel in violation of the Sixth

Amendment, a convicted and sentenced prisoner must show both that

his counsel's performance fell below an objective standard of

reasonable professional assistance and that there is a reasonable

probability that, but for counsel's unprofessional errors, the outcome would have been different ).

In any event, as there is no constitutional prohibition against the consideration of the type of hearsay evidence considered by the state court here, Petitioner cannot show that counsel's performance fell below an objective standard of reasonable professional assistance.  Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason would not disagree that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

18

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.   An appropriate order follows.

<u>S/Faith S. Hochberg</u>
Faith S. Hochberg
United States District Judge

Dated: December 4, 2007